# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Federal Trade Commission,<br><br>    Petitioner,<br><br>    v.<br><br>Retail Services & Systems, Inc. d/b/a Total Wine & More,<br><br>    Respondent. | **Case No.** _____ |

## **DECLARATION OF CHRISTINA BROWN**

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1.   I am an attorney employed by the U.S. Federal Trade Commission ("FTC" or "Commission") in Washington, D.C. I am a staff attorney in the Anticompetitive Practices Division and am assigned to lead the FTC's investigation of Southern Glazer's Wine & Spirits, LLC ("Southern") (FTC File No. 211-0155), which includes the Civil Investigative Demand ("CID") issued to Respondent Retail Services & Systems, Inc. d/b/a Total Wine & More ("Respondent" or "Total Wine") on February 23, 2023.

2.   I am authorized to execute a declaration verifying the facts set forth in the Petition of the Federal Trade Commission for a Show Cause Hearing and an Order Enforcing Civil Investigative Demand. I have reviewed the petition and exhibits ("Pet. Exs.") and verify that Exhibits 2 through 31 are true and correct copies of the original documents. The facts set forth herein are based on my personal knowledge or information made known to me in the course of my official duties.

3. The FTC initiated this investigation after receiving complaints from participants in the alcohol production, distribution, and retail industry. The purpose of the investigation is to determine whether Southern, the largest distributor of wine and spirits in the United States, has (1) engaged in discriminatory practices in its sales to retailers in violation of the Robinson-Patman Act, 15 U.S.C. § 13, as amended; and/or (2) engaged in unfair methods of competition in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

4. As part of this investigation, FTC staff is investigating whether Southern is engaged in price discrimination in violation of Section 2(a) of the Robinson-Patman Act and/or non-price services discrimination in violation of Section 2(e) of the Robinson-Patman Act. Specifically, the FTC is investigating whether Southern is discriminating: (1) with respect to price, by selling wine and spirits of like grade and quality to small, independent retailers at prices higher than the prices it extends to large, favored chain retailers, such as Total Wine, and (2) with respect to services, by providing Total Wine and other large chain retailers with discriminatory non-price services, such as shelf stocking and other forms of free labor and marketing support, that it does not provide to smaller independent retailers.

5. To aid the investigation, on February 23, 2023, the Commission issued nearly identical CIDs to Total Wine and nine of Southern's other largest chain retailer customers pursuant to FTC Resolution P210100. Commission Chair Lina Khan signed the CIDs under the authority delegated by the Commission in Section 2.7(a) of its Rules of Practice. 16 C.F.R. § 2.7(a). The FTC served Total Wine a courtesy copy of its CID via email on February 24, 2023 and formally served Total Wine via expedited delivery service on February 27, 2023.

6. Total Wine is a large chain retailer of wine and spirits with over 250 retail locations under its banner in the United States. Total Wine transacts business and operates retail

locations in the Commonwealth of Virginia, including in the Eastern District of Virginia. Total Wine purchases wine and/or spirits from Southern in nineteen states, including Virginia. FTC staff understands that during the CID period, Total Wine was one of Southern's largest retail customers by purchase volume.

7. The CID requires Total Wine to respond to two interrogatories, six data requests, and eleven document requests on or before March 25, 2023. The CID also requires that Total Wine must raise any "factual or legal objections" to the CID by filing a petition to limit or quash the CID within 20 days of service, and that Total Wine "must certify that [its] responses are complete by completing the 'Form of Certificate of Compliance' set forth on the back of the CID form or by signing a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746." Pet. Ex. 2.

8. The CID specifications seek information and materials regarding wine and spirits sold at both the wholesale and retail levels, including: (a) the wine and spirits Total Wine purchases and sells, including sales and purchase data (Specifications 1-2, 7-11, 17); (b) formal and informal agreements between Total Wine and its distributors or suppliers (Specification 3); (c) Total Wine's negotiation processes for pricing, rebates, promotions, coupons, and other discounts (Specifications 3-4, 16); (d) services provided to Total Wine by Southern (Specifications 5-6); (e) Total Wine's market share and competition at the wine and spirits retailer level (Specifications 12-13); (f) Total Wine's inventory and storage processes (Specifications 14-15); and (g) Total Wine's strategies, practices, or policies regarding retail sales of wine and spirits (Specifications 12-13). Pet. Ex. 2.

9. The CID is tailored to seek information that will assist FTC staff in determining whether Southern is providing discriminatory prices, free labor, marketing support, or other

advantages to Total Wine or other favored, large chain retailers that it does not make available to small, independent retailers. The information sought by the CID will also help FTC staff evaluate whether any such sales satisfy the "in commerce" requirement of the Robinson-Patman Act and whether any discriminatory pricing or services is excused by a valid defense, including a good-faith attempt to meet competition or as cost-justified by documented cost differences in selling to favored and disfavored purchasers.

10. Beginning on February 24, 2023, FTC staff attempted to engage with Total Wine through a series of emails, letters, and conferences to secure Total Wine's compliance with the CID, including by selecting a small set of Total Wine employees ("custodians") whose files Total Wine would search for responsive materials. CID recipients typically engage with FTC staff in this type of collaborative and iterative process to identify custodians likely to possess responsive materials and to provide information about employee roles and responsibilities. Every other retailer CID recipient in this investigation has undertaken this type of engagement with FTC staff and produced responsive internal and external communications located through a search of an agreed-on group of relevant employees' custodial files.

11. FTC staff's initial email to Total Wine, sent February 24, included the first of many requests for Total Wine to prepare to discuss its "plan for locating and preserving responsive information, including by identifying custodians." Pet. Ex. 6. FTC staff made similar requests of Total Wine in emails sent February 28 and March 30, letters sent March 16 and March 24, and conferences with Total Wine on March 7, March 13, March 15, and March 22. Pet. Exs. 7-10. Total Wine was not prepared to discuss a production plan or identify custodians at any of these conferences.

12. FTC staff nevertheless agreed to extend the CID return date once and to extend the 20-day deadline to petition to limit or quash the CID twice before April 3, conditioning those extensions on Total Wine's commitment to produce an initial set of priority materials, to promptly provide staff with a proposed production plan, to inform staff of any requests to modify the CID, to propose document custodians, and to explain what custodial document collection methodology it would use to identify responsive material. Pet. Exs. 8-9.

13. On April 3, Total Wine made an initial production consisting of one employee chart, one document, and a sample of sales data responsive to Specification 10 for just ten of its wine and spirits products. Total Wine also provided certain basic information about its business. Total Wine still did not identify a plan for locating and preserving responsive information, including by identifying custodians. Instead, Total Wine's transmittal letter objected to the CID and stated that Total Wine would not comply with additional specifications unless and until there was a global resolution of its objections. Pet. Ex. 11.

14. FTC staff and Total Wine conferred three times on April 4, during which FTC staff reiterated its earlier requests, explained the relevance of the information sought by the CID, and invited Total Wine to identify relevant document custodians and search terms to limit its search for materials responsive to specifications asking for "all documents." In an April 5 letter memorializing these conferences, FTC staff referred Total Wine to 16 C.F.R. § 2.7(k), which requires a CID recipient to attempt to resolve with FTC staff all grounds for a petition to limit or quash prior to filing such a petition. Pet. Ex. 12. FTC staff also advised Total Wine that it would not extend the deadline to petition to limit or quash the CID for a third time, as the only rationale Total Wine supplied in support of a third extension of this deadline was that it would provide additional time to continue discussing the scope of the CID, and this was insufficient to warrant

another extension under 16 C.F.R. § 2.10(a)(5). By April 5, FTC staff had conferred with Total Wine seven times and exchanged over eighteen emails and letters in its efforts to secure CID compliance.

15. After these negotiations about Total Wine's objections and FTC staff's proposed deferral of certain responses, Total Wine filed a petition to limit the CID on April 7, 2023. No other retailer filed a petition to limit or quash its respective, nearly identical CID. Total Wine's petition did not raise a categorical objection to searching employees' custodial files for responsive materials and instead represented that it was willing to discuss "the nature and scope of searches of the Company's files," including "the appropriateness of word searches of certain custodians' files" in response to specifications requiring production of "all documents" related to a topic. Pet. Ex. 4 at 15. FTC staff continued its efforts to confer with Total Wine regarding searches of its employees' custodial files while the petition to limit was pending. *See, e.g.*, Pet. Ex. 13.

16. On May 19, 2023, the Commission denied Total Wine's petition to limit the CID and ordered Total Wine to "comply in full with the Commission's Civil Investigative Demand no later than June 16, 2023," or at another deadline set by FTC staff. Pet. Ex. 5. Total Wine never requested an extension of this deadline.

17. After the Commission issued its order, FTC staff continued its efforts to confer with Total Wine regarding its CID compliance and reiterated its offer to address any purported burden associated with document requests by negotiating a set of document custodians and search terms. Pet. Exs. 14-15, 17-19. But Total Wine refused to confer with FTC staff before the June 16 compliance deadline and asserted that "we do not think custodians are necessary for Total Wine to conduct a reasonably diligent search [in] this case." Pet. Ex. 16.

18. On June 15 and 17, 2023, Total Wine made limited productions of materials, largely after the June 16, 2023 compliance deadline, which it asserted "should relieve [Total Wine] of any further production obligations." Pet. Ex. 20 at 4; *see also* Pet. Ex. 21. Among other things, these productions included internally created maps and reports for four states (Arizona, California, Florida, and Texas) out of the nineteen states in which Total Wine and its affiliates conduct business with Southern.[1] Total Wine's June 15 and 17, 2023 productions were incomplete and reflected a decision to grant itself significant modifications of the CID, including several modifications not sought in its petition to the Commission. Total Wine unilaterally narrowed the CID definitions of "Distributor" and "Relevant Products" in many cases, refused to produce any responsive documents from any employee's custodial files, limited its production of certain datasets to information from four states (contrary to Definition D.14, defining the "Relevant Area" as "any state"), failed to produce complete data responsive to Specification 11, and failed to include any explanation or definitions of the fields in several datasets (as required by Specification 9 and Instruction 17(c)). Total Wine also did not provide the certification of compliance required by the CID and FTC Act.

19. In a series of communications between July 6, 2023 and August 23, 2023, FTC staff notified Total Wine that it was in default of its obligations under the CID, identified numerous deficiencies in its CID response, and set forth a schedule and various proposals for Total Wine to make further limited and specific productions in order to avoid a CID enforcement action. Pet. Exs. 22-23, 25, 27.

---

[1] In addition to Arizona, California, Florida and Texas, FTC staff believes that there are fifteen other states where Total Wine purchases Relevant Products from Southern: Colorado, Delaware, Illinois, Indiana, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, New Mexico, Nevada, New York, South Carolina, and Washington.

20. In its July 26, 2023 letter, FTC staff identified five employees (Thomas Trone, Travis Smith, Eli Aguilera, Angela Weber, and Troy Rice) judged likely to have relevant documents based on their job titles and information obtained from documents produced by other CID recipients. Pet. Ex. 23. FTC staff understands these individuals regularly interact with Southern and are likely to have materials relating to Total Wine's purchases of wine and spirits from Southern, services provided by Southern, and competition with other retailers. Apart from its categorical refusal to produce custodial documents, Total Wine has never objected to the relevance of these particular employees. Total Wine has represented to FTC staff that it retains employee documents for only ninety days.

21. Total Wine's refusal to engage with FTC staff in a collaborative process to identify custodians (as every other retailer CID recipient did), has put FTC staff at a disadvantage in identifying the full set of most relevant Total Wine employees, and there may be other custodians with highly-relevant and non-duplicative information.

22. On August 15, 2023, in lieu of producing material responsive to the CID, Total Wine offered to produce five discrete categories of documents. This fell far short of addressing many of the outstanding deficiencies identified in FTC staff's July 6 and July 26 letters. These categories included:

   a. A consolidated export of usable Specification 11 data;

   b. Internally created maps identifying stores and competitors, similar to what Total Wine previously produced for four states (Arizona, California, Florida, and Texas), for the fifteen other states where Total Wine and its affiliates conduct business with Southern;

   c. Southern-related Cost Collection Files, QD Buy Tools, Pre-Sell Reports, Out-of-Stock Reports, Vendor Unknown Reports, and Vendor-Does-Not-Carry Reports, similar to what Total Wine previously produced for four states (Arizona, California, Florida, and Texas), for the fifteen other states where Total Wine and its affiliates conduct business with Southern;

8

  d. Addresses and opening dates for Total Wine's warehouses in California and Florida; and

  e. Specification 7 data for transactions with distributors Republic National Distributing Company (RNDC) and Breakthru.

Pet. Ex. 24.

23. Ultimately, in an effort to resolve these issues without seeking court intervention, FTC staff requested that Total Wine cure its production deficiencies through the following steps: (1) search and produce documents responsive to Specifications 3, 6, 12-13, and 15-16 from the files of five Total Wine employees (Thomas Trone, Travis Smith, Eli Aguilera, Angela Weber, and Troy Rice) who FTC staff has reason to believe possess relevant information; (2) provide definitions of the fields in certain datasets in its production, and (3) produce the five categories of materials identified and offered by Total Wine in its August 15 letter.[2] FTC staff also provided Total Wine a set of seven searches to run to help identify responsive documents in the files of the five proposed custodians. Pet. Ex. 25.

24. Total Wine ignored the deadlines set forth in FTC staff's schedule, rejected the seven proposed searches without offering any suggested modifications or counterproposals, and declared that it would make no additional productions unless and until FTC staff waived any requirement that Total Wine produce documents responsive to Specifications 3, 6, 12-13, and 15-16 from any custodian's files or from internal emails. Pet. Exs. 26, 28. In contrast, all other retailer CID recipients have completed substantial productions, including highly relevant internal emails and non-duplicative external communications with Southern.

---

[2] FTC staff's August 18, 2023 letter included certain complete Specification 10 data free from Total Wine's unilaterally imposed limitations, Pet Ex. 25, but FTC staff dropped this request in its August 23, 2023 letter identifying only (1) custodial documents, (2) definitions of data fields, and (3) the five items identified by Total Wine on August 15, 2023, Pet. Ex. 27.

25. FTC staff has spent months attempting to secure Total Wine's compliance with its CID obligations, but Total Wine has shown itself unwilling to comply with the CID or the Commission's order directing CID compliance. Total Wine's noncompliance has burdened and delayed the Commission's investigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 20, 2023

/s/ Christina Brown
Christina Brown
Attorney
Anticompetitive Practices Division
Bureau of Competition
Federal Trade Commission