UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Federal Trade Commission,

      Petitioner,

      v.

Retail Services & Systems, Inc. d/b/a Total Wine & More,

      Respondent.

**Case No. _____**

**MEMORANDUM IN SUPPORT OF PETITION OF THE FEDERAL TRADE COMMISSION FOR A SHOW CAUSE HEARING AND <u>AN ORDER ENFORCING CIVIL INVESTIGATIVE DEMAND</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

   I.   An Administrative Subpoena Issued As Part Of A Legitimate Investigation Should Be
Summarily Enforced ................................................................................................................ 4

   II.   The Commission Has Met All Requirements For CID Enforcement ................................... 6

      A.   The Investigation Is Within the Commission's Authority, and the CID Complies with
All Statutory Prerequisites ..................................................................................................... 7

      B.   The Documents and Information Sought Are Relevant to the Commission's
Investigation ........................................................................................................................... 8

         1.   The Nine CID Specifications at Issue Request Information Directly Relevant to the
Matters Under Investigation ................................................................................................... 9

         2.   Custodial Files Are Potential Sources of Relevant Information that Total Wine Must
Search for Responsive Documents ........................................................................................ 13

      C.   Total Wine Cannot Defeat Enforcement of the CID on Grounds of Indefiniteness or
Undue Burden ....................................................................................................................... 16

   III.   Total Wine Has Waived Any Challenge To The CID Not Raised Before The FTC ......... 19

CONCLUSION ....................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alphin v. United States*,
  809 F.2d 236 (4th Cir. 1987) ........................................................................ 6

*Arvco Container Corp. v. Weyerhaeuser Co.*,
  No. 1:08-cv-548, 2009 WL 311125 (W.D. Mich. Feb. 9, 2009). ................. 10

*EEOC v. Am. & Efird Mills, Inc.*,
  964 F.2d 300 (4th Cir. 1992) ........................................................................ 6

*EEOC v. Lockheed Martin Corp.*,
  116 F.3d 110 (4th Cir. 1997) ........................................................................ 9

*EEOC v. Maryland Cup Corp.*,
  785 F.2d 471 (4th Cir. 1986) ................................................................ 7, 17

*EEOC v. Shell Oil Co.*,
  466 U.S. 54 (1983) ........................................................................................ 9

*Falls City Indus. v. Vanco Beverage, Inc.*,
  460 U.S 428 (1983) ...................................................................................... 11

*FTC v. Am. Buyers Network, Inc.*,
  No. CIV. A. 91-B-1158, 1991 WL 214163 (D. Colo. Aug. 19, 1991) ...................... 5

*FTC v. Dinamica Financiera LLC*,
  No. CV0804649, 2008 WL 11342612 (C.D. Cal. Sept. 22, 2008) .......................... 5

*FTC v. Dresser Indus., Inc.*,
  No. 77-44, 1977 WL 1394 (D.D.C. Apr. 26, 1977) ........................... 6, 18, 19

*FTC v. Invention Submission Corp.*,
  965 F.2d 1086 (D.C. Cir. 1992) ........................................................... passim

*FTC v. LabMD, Inc.*,
  No. 1:12-CV-3005, 2012 WL 13104826 (N.D. Ga. Nov. 26, 2012) ...................... 5

*FTC v. Morton Salt Co.*,
  334 U.S. 37 (1948) .................................................................................... 2, 7

*FTC v. O'Connell Assocs., Inc.*,
  828 F. Supp. 165 (E.D.N.Y. 1993) ......................................................... 19, 20

*FTC v. Reckitt Benckiser Pharms., Inc.*,
  No. 3:14-MC-00005 (E.D. Va. Aug. 26, 2014) ........................................... 5

*FTC v. Simplicity Pattern Co.*,
  360 US. 55 (1959) ...................................................................................... 10

*FTC v. Sun Oil Co.*,
  371 U.S. 505 (1963) .................................................................................... 12

*FTC v. Texaco, Inc.*,
  555 F.2d 862 (D.C. Cir. 1977) ............................................................. passim

*FTC v. Tracers Info. Specialists, Inc.*,
    No. 8:16-MC-TGW, 2016 WL 3896840 (M.D. Fla. June 10, 2016)....................................20

*FTC v. XCast Labs, Inc.*,
    No. 21-1026, 2021 WL 6297885 (C.D. Cal. Dec. 9, 2021)....................................19

*In re McVane*,
    44 F.3d 1127 (2d Cir. 1995)....................................6

*L&L Oil Co. v. Murphy Oil Corp.*,
    674 F.2d 1113 (5th Cir. 1982)....................................13

*McKart v. United States*,
    395 U.S. 185 (1965)....................................19

*Precision Printing Co. v. Unisource Worldwide, Inc.*,
    993 F. Supp. 338 (W.D. Pa. 1998)....................................13

*Resol. Tr. Corp. v. Greif*,
    906 F. Supp. 1446 (D. Kan. 1995)....................................16

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
    878 F.2d 875 (5th Cir. 1989)....................................9, 14

*Software Rts. Archive, LLC v. Google Inc.*,
    No. 2:07-CV-511, 2009 WL 1438249 (D. Del. May 21, 2009)....................................19

*Solis v. Food Emps. Lab. Rels. Ass'n*,
    644 F.3d 221 (4th Cir. 2011)....................................5, 6, 7

*Standard Oil Co. v. FTC*,
    340 U.S. 231 (1951)....................................12, 13

*Texaco v. Hasbrouk*,
    496 U.S. 543 (1990)....................................11, 13

*United States v. Am. Target Advert., Inc.*,
    257 F.3d 348 (4th Cir. 2001)....................................5, 6

*United States v. Art Metal-U.S.A., Inc.*,
    484 F. Supp. 884 (D.N.J. 1980)....................................8

*United States v. Dynavac, Inc.*,
    6 F.3d 1407 (9th Cir. 1993)....................................6

*United States v. Markwood*,
    48 F.3d 969 (6th Cir. 1995)....................................5

*United States v. Morton Salt Co.*,
    338 U.S. 632 (1950)....................................6, 8, 14, 19

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    No. C 08–80129 SI, 2008 WL 3876142 (N.D. Cal. Aug.18, 2008)....................................19

*Volvo Trucks No. Am., Inc. v. Reeder-Simco GMC, Inc.*,
    546 U.S 164 (2006)....................................3, 11

*Walsh v. Alight Sols LLC,*
    44 F.4th716 (7th Cir. 2022) ................................................................. 16

**Statutes**

15 U.S.C. § 13 ...................................................................................... passim

15 U.S.C. § 45 ........................................................................................ 2, 7

15 U.S.C. § 49 ........................................................................................... 18

15 U.S.C. § 57b .................................................................................... 4, 7, 8

**Other Authorities**

*Hearing on H.R. 8442, H.R. 4995, H.R. 5062 Before the H. Comm. on the Judiciary*, 74th Cong.
    4 (1935) ................................................................................................ 2

**Regulations**

16 C.F.R. § 2.10 ....................................................................................... 19

16 C.F.R. § 2.7 ........................................................................................... 8

16 C.F.R. §2.7 .......................................................................................... 20

## **INTRODUCTION**

On February 23, 2023, the Federal Trade Commission ("FTC" or "Commission") issued a civil investigative demand ("CID") to Retail Services & Systems, Inc. d/b/a Total Wine & More ("Total Wine") as part of an investigation into whether large chain retailers like Total Wine are receiving discriminatory pricing and services unavailable to smaller, independent businesses in violation of the Robinson-Patman Act. Despite FTC staff's repeated, good faith efforts to secure Total Wine's timely compliance with the CID—including several conferences, extensive correspondence, and multiple extensions of time—Total Wine, on April 7, 2023, filed a petition with the Commission to limit the CID. The Commission denied the petition and ordered Total Wine to comply fully with the CID by June 16, 2023.

Notwithstanding the Commission's order, Total Wine ignored its obligations under the CID and refused to confer with FTC staff in advance of the Commission ordered compliance deadline. Instead, Total Wine produced a self-selected, limited set of material and unilaterally proclaimed that its incomplete production "relieve[d] [it] of any further production obligations."

To date, Total Wine is still refusing to comply with the Commission's order. Total Wine's CID response is grossly deficient in multiple respects, in significant part due to Total Wine's categorical refusal to search a limited set of employees' custodial files (i.e., files in a specific employee's possession, custody, or control) for documents and information responsive to the CID. Such routine custodial searches are essential to the Commission's investigation, and every other retailer that received a CID during the investigation has conducted similar searches. The Commission is thus left with no choice but to petition this Court to order Total Wine to appear and show cause why it should not have to comply with the CID, and enter an order directing Total Wine to cure the deficiencies identified in the Commission's petition and produce all specified

documents and information within twenty days.

## **BACKGROUND**

The FTC is investigating potentially discriminatory—and thus, potentially illegal—pricing and services in the wine and spirits industry. In the United States, the production, distribution, and sale of wine and spirits occur within a three-tier system created by the 21st Amendment and the Federal Alcohol Administration Act of 1935. The three-tier structure exists in every state: wine and spirits are sold and transported from brand owners, manufacturers, and importers ("suppliers") in the first tier, to distributors in the second tier, to retailers in the third tier, and then to consumers. Southern Glazer's Wine & Spirits LLC ("Southern") is the largest U.S. distributor of wine and spirits and operates in the second tier. Brown Decl. ¶ 3. Total Wine is a large chain retailer in the third tier with over 250 retail locations in the United States; it purchases wine and spirits from Southern and other distributors. *Id.* ¶ 6. Total Wine is one of Southern's top retail customers. *Id.*

The Commission is investigating whether Southern has (1) engaged in discriminatory practices in its sales to retailers like Total Wine in violation of the Robinson-Patman Act, 15 U.S.C. § 13, as amended; and/or (2) engaged in unfair methods of competition in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Brown Decl. ¶ 3.

Enacted in 1936, the Robinson-Patman Act was a response by Congress to growing concerns that increased market power and the coercive practices of chain stores and other big buyers threatened the existence of small, independent retailers. *See FTC v. Morton Salt Co.*, 334 U.S. 37, 43-45 (1948). As Congressman Wright Patman explained, the Robinson-Patman Act sought "to give all of the independent merchants of this country the same rights, privileges, benefits, and opportunities as the larger chains or concerns receive, and no more."[1] Section 2(a)

---

[1] *Hearing on H.R. 8442, H.R. 4995, H.R. 5062 Before the H. Comm. on the Judiciary*, 74th Cong. 4 (1935) (statement of Congressman Wright Patman).

prohibits a supplier from bestowing a competitive advantage to large, favored retailers through the contemporaneous sale of goods of like grade and quality to small, independent businesses at higher prices, with exceptions for price differences that can be justified by cost savings associated with doing business with the favored retailer or that constitute bona fide attempts to meet a competitive offer.[2] 15 U.S.C. §§ 13(a) & (b). Sections 2(d) and 2(e) require a seller to provide promotional or advertising allowances or services to competing buyers on proportionally equal terms. 15 U.S.C. §§ 13(d) & (e). Not just focused on sellers, the Robinson-Patman Act also makes it illegal for a buyer to knowingly induce or accept a discriminatory price prohibited by Section 2(a). 15 U.S.C. § 13(f). Here, the Commission's investigation is focused on potential "secondary-line" price discrimination under the Robinson-Patman Act, where the actual or threatened injury is to competition between favored customers of the seller who receive the discriminatory price and the seller's disfavored customers. *See, e.g., Volvo Trucks No. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S 164, 176 (2006).

　　As part of its active investigation into Southern, the Commission issued CIDs to Total Wine and nine other large chain retailers—possible favored customers or beneficiaries of Southern's potentially discriminatory practices—on February 23, 2023, with a return date of March 25, 2023. All retailers have completed (or nearly completed) their respective productions in response to the Commission's CIDs, except for Total Wine. Instead of complying, Total Wine petitioned the Commission to quash or limit the CID, arguing that the Commission should (1) limit the CID's definitions of "Distributors" and "Relevant Products," terms which bring within the

---

[2] The Act provides, in relevant part: "It shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them." 15 U.S. C. § 13(a)

scope of the CID Southern, competing distributors, and all wine and spirits they sell; (2) narrow the five-year relevant timeframe specified in Instruction 1 of the CID; (3) strike Specifications 8 and 12-15 seeking information about Total Wine's retail business and competitive position in the market; and (4) modify certain specifications seeking "all documents." Pet. Ex. 4. On May 19, 2023, the Commission denied the petition and ordered Total Wine to fully comply with the CID by June 16, 2023. Pet. Ex. 5.

Since the Commission issued the CID, FTC staff repeatedly tried to confer with Total Wine to select a small set of Total Wine employees whose files it must search for responsive materials and to narrow the requests for "all documents." This is the type of engagement every other third-party CID recipient has undertaken, and the type of engagement required by CID Instruction I.4. Brown Decl. ¶¶ 10-12; Pet. Exs. 6-10. The Commission incorporates here the statement of facts from its petition and the accompanying declaration by FTC attorney Christina Brown, which details FTC staff's extensive efforts to solicit Total Wine's compliance with the CID. Pet. ¶¶ 12-13, 18-22; Brown Decl. ¶¶ 10-12, 17-23. Rather than confer with FTC staff and comply, Total Wine has made only partial productions of selective records and refuses to search any custodial files for responsive documents and information—ultimately falling far short of substantial compliance with the CID and delaying the Commission's investigation. Pet. ¶¶ 14, 20, 23-25; Brown Decl. ¶¶ 13, 18, 24-25.

## **ARGUMENT**

## I.    **An Administrative Subpoena Issued As Part Of A Legitimate Investigation Should Be Summarily Enforced**

Under Section 20(h) of the FTC Act, 15 U.S.C. § 57b-1(h), a federal district court may order the enforcement of a CID issued by the FTC where the recipient fails to comply with the CID's requirements. *See, e.g.*, *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1087-89 (D.C.

Cir. 1992). Recognizing that "Congress delegated enforcement mechanisms to agency discretion," the Fourth Circuit has emphasized that the district court's role in a proceeding to enforce an administrative subpoena—like the CID here—is "sharply limited." *Solis v. Food Emps. Lab. Rels. Ass'n*, 644 F.3d 221, 226 (4th Cir. 2011).

Actions enforcing administrative process "are designed to be summary in nature," and therefore are properly instituted by a petition and order to show cause rather than by complaint and summons. *United States v. Am. Target Advert., Inc.*, 257 F.3d 348, 353-55 (4th Cir. 2001); *see also Solis*, 644 F.3d at 223-26; *FTC v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977) ("[T]he 'very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated duties of industry regulation is the rapid exercise of the power to investigate . . . .'") (citation omitted). To protect "the important governmental interest in the expeditious investigation of possible unlawful activity," *United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) (quoting *Texaco*, 555 F.2d at 872-73), show cause orders frequently are issued within days after the Commission files an enforcement petition. *See FTC v. Am. Buyers Network, Inc.*, No. CIV. A. 91-B-1158, 1991 WL 214163 at *3 (D. Colo. Aug. 19, 1991) ("Subpoena enforcement actions should proceed with dispatch so that the underlying investigation is not unduly disrupted"); *see also FTC v. Reckitt Benckiser Pharms., Inc.*, No. 3:14-MC-00005, ECF No. 6 (E.D. Va. Aug. 26, 2014) (issuing show cause order within three weeks after petition was filed); *FTC v. LabMD, Inc.*, No. 1:12-CV-3005, 2012 WL 13104826, at *2 (N.D. Ga. Nov. 26, 2012) (issuing show cause order one week after petition was filed); *FTC v. Dinamica Financiera LLC*, No. CV0804649, 2008 WL 11342612, at *2 (C.D. Cal. Sept. 22, 2008) (issuing show cause order the day after petition was filed).

## II.     The Commission Has Met All Requirements For CID Enforcement

A district court must enforce an administrative subpoena when an agency establishes that:

"(1) it is authorized to make such investigation; (2) it has complied with statutory requirements of

due process; and (3) the materials requested are relevant." *EEOC v. Am. & Efird Mills, Inc.*, 964

F.2d 300, 302-03 (4th Cir. 1992); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652

(1950) ("it is sufficient if the inquiry is within the authority of the agency, the demand is not too

indefinite and the information sought is reasonably relevant"); *Am. Target Advert.*, 257 F.3d at 351

(explaining that in granting an enforcement petition, the district court "need only have discerned"

the *Efird Mills* elements).[3] A declaration from a knowledgeable government employee may be

relied on to demonstrate that these requirements for subpoena enforcement have been satisfied. *In

re McVane*, 44 F.3d 1127, 1135-36 (2d Cir. 1995) ("An affidavit from a government official is

sufficient to establish a prima facie showing that these requirements have been met." (citations

omitted)); *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993) ("[T]he government's

burden is a slight one, and may be satisfied by a declaration . . . ."); *see also Alphin v. United

States*, 809 F.2d 236, 238 (4th Cir. 1987) ("[the agent's] affidavit discloses that as a matter of law

the government has established a prima facie case").

Not only is the government's prima facie burden slight, but a respondent's rebuttal burden

is "heavy." *FTC v. Dresser Indus., Inc.*, No. 77-44, 1977 WL 1394, at *3 (D.D.C. Apr. 26, 1977).

Indeed, a respondent—whether it be a target or a third party—can only rebut an agency's prima

facie showing by demonstrating that it would incur an unreasonable or undue burden in complying

---

[3] This analysis applies equally to FTC and other agency subpoenas. *See Am. & Efird Mills, Inc.*, 964 F.2d at 303 (stating standard for administrative subpoenas generally and citing *Morton Salt*, 338 U.S. at 652); *Solis*, 644 F.3d at 226 (applying *Efird Mills* to Department of Labor subpoena); *Am. Target Advert., Inc.*, 257 F.3d at 350 (applying *Efird Mills* to US Postal Inspection Service subpoena).

with the CID. *See Solis,* 644 F.3d at 226; *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 475-76 (4th Cir. 1986) (citing *Texaco,* 555 F.2d at 882).

As documented in the Petition and Brown Declaration, the Commission has satisfied each of the requirements for judicial enforcement of the CID issued to Total Wine. The Commission is authorized to investigate violations of the FTC Act and Robinson-Patman Act; the Commission issued the CID pursuant to all statutory and procedural prerequisites; and the CID seeks materials relevant to the ongoing investigation. Moreover, Total Wine cannot avoid enforcement of the CID on grounds of indefiniteness or undue burden.

### A. The Investigation Is Within the Commission's Authority, and the CID Complies with All Statutory Prerequisites

The Commission lawfully and properly issued the CID to Total Wine as part of an ongoing investigation into whether Southern, the largest U.S. distributor of wine and spirits product, has violated the Robinson-Patman Act by engaging in discriminatory sales practices in favor of large chain retailers—such as Total Wine—and harming smaller, independent retailers. The Commission is authorized by Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), to prevent unfair or deceptive acts or practices in or affecting commerce. The Commission also is authorized to enforce Section 2 of the Robinson-Patman Act, 15 U.S.C. § 13, as amended, which generally prohibits a seller from discriminating in price and non-price services provided to favored customers and disfavored purchasers of commodities of like grade and quality. *See Morton Salt,* 334 U.S. at 40-50. The investigation to which the CID pertains thus falls well within the FTC's statutory authority.

Administrative agencies' authority to gather documents and information from third parties in an investigation also is well-established. *See* 15 U.S.C. § 57b-1(c)(1) (authorizing the Commission to issue CIDs "[w]henever the Commission has reason to believe that any person may be in possession, custody, or control of any documentary material or tangible things, or may have

any information, relevant to unfair or deceptive acts or practices"); *see also United States v. Art Metal-U.S.A., Inc.*, 484 F. Supp. 884, 887 (D.N.J. 1980) ("Administrative agencies vested with investigatory and subpoena powers may compel the production of information and documents from third persons who are not expressly within their regulatory jurisdiction, so long as the information sought is relevant and necessary to the effective conduct of their authorized and lawful inquiry."). To this end, the Commission issued nearly identical CIDs to ten third-party wine and spirits retailers, including Total Wine, Brown Decl. ¶ 5, pursuant to Section 20 of the FTC Act. *See* 15 U.S.C. § 57b-1(c)(1). The Commission acted under a valid agency resolution authorizing compulsory process to investigate the very type of conduct at issue here—unfair practices targeting small business operators. *Id.*; Pet. Ex. 3.

Finally, the Commission issued the CID in compliance with all applicable procedural requirements of the FTC Act and its implementing rules. *See* Brown Decl. ¶ 5; *see also* 15 U.S.C. §§ 57b-1(c)(2), (c)(3), (c)(5), (c)(7), (i) (detailing requirements for form, content, and service of CIDs); 16 C.F.R. § 2.7(a), (b) (requiring Commissioner signature and Commission resolution for issuance of CID).

### B. The Documents and Information Sought Are Relevant to the Commission's Investigation

The FTC investigates to determine whether there is reason to believe that the law has been, or is being, violated and, if so, whether a complaint by the Commission would be in the public interest. Indeed, the FTC "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Texaco*, 555 F.2d at 872 (quoting *Morton Salt*, 338 U.S. at 642-43). The Commission may demand by CID any material "reasonably relevant" to an investigation—a boundary that may be broadly defined by the agency. *Morton Salt*, 338 U.S. at 642-43, 652; *Invention Submission,* 965 F.2d at 1090. As the Fourth Circuit noted, "[t]he

Supreme Court has characterized the relevancy requirement as 'not especially constraining.'" *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 113 (4th Cir. 1997) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1983)). And "[c]ourts defer to an agency's own appraisal of what is relevant 'so long as it is not obviously wrong.'" *Id.* (quoting *Invention Submission*, 965 F.2d at 1089). Importantly, "the Commission has no obligation to establish precisely the relevance of the material it seeks in an investigative subpoena by tying that material to a particular theory of violation." *Invention Submission*, 965 F.2d at 1090 (citations omitted). If the requested information "touches a matter under investigation," it will survive a relevancy challenge. *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (citation omitted).

### 1. The Nine CID Specifications at Issue Request Information Directly Relevant to the Matters Under Investigation

Here, the Commission seeks an order compelling Total Wine to cure specific deficiencies by producing data and information responsive to CID Specifications 3, 6, 7, and 11-16. As explained in the Commission's May 19 order denying Total Wine's Petition to Limit the CID, and as detailed below, each of these specifications seeks materials highly relevant to evaluating an element of or potential defense to a Robinson-Patman Act violation and possible injury in the markets potentially affected by secondary-line price discrimination. Pet. Ex. 5 at 4-6. Indeed, every other third-party retailer that received a CID from the Commission produced materials in response to these CID Specifications. The Court should order Total Wine to do the same.

Specification 3 seeks documents related to formal or informal agreements, offers, understandings, arrangements, negotiations, or discussions between Total Wine and any distributor or supplier regarding the availability, price, discounts, or quantity of any wine or spirits product purchased by Total Wine. Pet. Ex. 2. This information is relevant to identifying any disparate pricing (including discounts and promotional allowances) that may be available to large

chain retailers and to ascertain the motivation, purpose, context, and effect of the possible discriminatory conduct. Indeed, "[i]t is difficult to imagine a more relevant line of inquiry in a Robinson-Patman case" than documents relating to negotiations and agreements governing the quantities, prices, discounts, and specifications of commodities sold by a distributor or supplier to a potentially favored purchaser. *See Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-cv-548, 2009 WL 311125, *3 (W.D. Mich. Feb. 9, 2009).

Specification 6 seeks information and documents on services furnished to Total Wine by Southern or any supplier. Pet. Ex. 2. This information will help staff evaluate whether Southern or any supplier of wine and spirits is providing free labor, marketing support, or other advantages to favored retailers, like Total Wine, that it does not make available to small, independent retailers. *See* 15 U.S.C. § 13(d) & (e) (prohibiting seller from granting advertising or promotional allowances or services in connection with a product's resale unless available to all competing buyers on proportionally equal terms); *see also FTC v. Simplicity Pattern Co.*, 360 US. 55 (1959).

Specification 7 seeks data on Total Wine's purchases of wine and spirits from any distributor. Pet. Ex. 2. In response, Total Wine has unilaterally and improperly limited its production to purchase data for Southern's products and has refused to produce data as to any other distributor. Total Wine resisted producing non-Southern data because "[t]he matter under investigation here is Southern," so the evidence that the Commission seeks "should be limited accordingly." Pet. Ex. 4 at 10. Total Wine raised this argument before the Commission, and the Commission rejected it. As the Commission explained in its May 19 order, information about Total Wine's purchases from other distributors is necessary for the Commission's evaluation of any potential Robinson-Patman Act violation or defense. For example, such information would assist the Commission in determining whether Southern made a good faith attempt to meet an equally

low price of a competitor or to match the services or facilities furnished by a competitor. Pet. Ex. 5 at 4; *see also* 15 U.S.C. § 13(b); *Falls City Indus. v. Vanco Beverage, Inc.*, 460 U.S 428, 439 (1983) (explaining that the meeting competition defense "requires that . . . the lower price must actually have been a good faith response to that competing low price"). Thus, information about other distributor's prices to Total Wine—although not dispositive of the issue—will help the Commission assess whether a prudent seller would reasonably believe that an equally low price was available from a competitor. Pet. Ex. 5 at 4; s*ee also Falls City*, 460 U.S. at 438-39 (vacating rejection of meeting competition defense and criticizing lower courts' lack of findings regarding competitors' prices and the information available to the seller about those prices).

Specification 11 seeks data on Total Wine's loyalty program cardholders and their purchases of relevant products by store.[4] Pet. Ex. 2. Specification 12 seeks Total Wine documents "related to competition in the market for retail sale" of wine and spirits. Pet. Ex. 2. In a secondary-line price discrimination case, such as here, the possible injury to competition occurs at the retail level between favored and disfavored buyers. *See Volvo*, 546 U.S. at 176. Contemporaneous business documents about competition in the retail market are thus highly relevant to understanding and analyzing the impact of Southern's purported discriminatory pricing and marketing practices. Pet. Ex. 5 at 5; *see also Texaco v. Hasbrouk*, 496 U.S. 543, 558 n.15 (1990); *Falls City*, 460 U.S. at 434-38. Similarly, information about the areas from which Total Wine stores draw customers and data on those customers' wine and spirits purchases is relevant to

---

[4] Notably, Total Wine produced two piecemeal data sets responsive to Specification 11, which include duplicate values in certain fields that prevents matching and consolidation of the entries. The FTC here simply seeks an order requiring Total Wine to produce a single, consolidated, and usable dataset responsive to Specification 11, consistent with the CID instructions.

identifying which wine and spirits retailers may compete with a particular Total Wine retail store location.

Specification 13 seeks documents provided to Total Wine's board and executive leaders regarding strategies, plans, and budgets for both the purchase of wine and spirits from distributors and their subsequent sale to consumers. Pet. Ex. 2. These strategy and planning documents are relevant to understanding the operation of the distribution and retail markets under investigation and Total Wine's relationship with Southern, other distributors, and suppliers, including the potential existence or exertion of buyer power. Pet. Ex. 5 at 5. Moreover, planning documents may inform the Commission's judgment about Total Wine's position within the retail market and the effects of Southern's conduct, including potential diverted or increased sales. *See, e.g., FTC v. Sun Oil Co.,* 371 U.S. 505, 518-519 (1963) (analyzing evidence showing patronage shifts from disfavored dealers to favored dealers).

Specifications 14 and 15 seek data and information about Total Wine's distribution centers, warehouses, storage facilities, and strategies for inventory management and tracking.[5] Pet. Ex. 2. The information these specifications seek is relevant to the Robinson-Patman Act's requirement that sales be "in commerce," such that at least one of the compared transactions crosses a state line. Pet. Ex. 5 at 5; *see also* 15 U.S.C. § 13(a); *Standard Oil Co. v. FTC*, 340 U.S. 231, 237-38 (1951). The information also is relevant to assessing any potential defense claiming that the price differentials reflect distribution functions assumed by particular customers, but not others, or that

---

[5] In addition to responsive custodial documents, there are two discrete categories of materials that the Commission seeks from Total Wine in response to Specifications 14 and 15. First, Total Wine should be ordered to produce the addresses and opening dates for Total Wine's warehouses in California and Florida. Second, Total Wine has produced certain regularly prepared cost, buying, and inventory reports responsive for four states (Arizona, California, Florida, and Texas). The FTC seeks an order requiring Total Wine to produce these same types of reports for all states in which Total Wine or its affiliates conduct business with Southern. Pet. ¶ 25. In addition to Arizona, California, Florida and Texas, FTC staff believes that there are fifteen other states where Total Wine purchases Relevant Products from Southern: Colorado, Delaware, Illinois, Indiana, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, New Mexico, Nevada, New York, South Carolina, and Washington. Brown Decl. ¶ 18.

the price differentials can be justified by cost savings from doing business with the favored retailer. Pet. Ex. 5 at 5; *see also Hasbrouk*, 496 U.S. at 562.

Specification 16 requests documents on Total Wine's strategies, practices, policies, communications and interactions with wine and spirits suppliers about pricing, discounts, coupons, other types of price reductions, promotional and marketing efforts, expected product demand, and orders. Pet. Ex. 2. Here again, the information is germane to this investigation and will help the Commission identify and assess possible differentials in the prices, free labor, marketing support or other advantages that suppliers directly or indirectly provide to large chain retailers like Total Wine. This information also will help the Commission assess (1) whether and to what extent suppliers may dictate or impact the terms and conditions of Southern's resale transactions with retailers and (2) whether any suppliers' sales to Southern are based on the actual or anticipated needs of specific customers, both inquiries that are germane to the "in commerce" requirement of Section 2(a). *See* 15 U.S.C. § 13(a); *see also Standard Oil*, 340 U.S. at 237-38, 250; *L&L Oil Co. v. Murphy Oil Corp.*, 674 F.2d 1113, 1116 (5th Cir. 1982); *Precision Printing Co. v. Unisource Worldwide, Inc.*, 993 F. Supp. 338, 343, 347-48 (W.D. Pa. 1998).

In sum, all nine specifications as to which the Commission seeks Total Wine's compliance far surpass the "broad" and "relaxed" relevance threshold for administrative subpoenas. *Invention Submission*, 965 F.2d at 1090.

### 2. Custodial Files Are Potential Sources of Relevant Information that Total Wine Must Search for Responsive Documents

In its most obstructionist objection to the CID, Total Wine refuses to conduct searches of and produce documents from any employee's custodial files in response to Specifications 3, 6, 12-13, and 15-16. After first repeatedly evading the FTC's efforts to negotiate a proposed set of employees' files to be searched, (Brown Decl. ¶¶ 10-14, 17-23), Total Wine has now implausibly

13

asserted that there are no internal communications relevant to the Commission's investigation of Southern's potentially discriminatory practices and thus it need not search any employee's custodial files. Pet. Exs. 26, 28. Moreover, Total Wine argues that any external communication between Total Wine and Southern is likely already in the FTC's possession from Southern. *Id.* Both arguments are erroneous.

First, there are myriad ways internal emails and documents touch on topics relevant to this investigation. For example, internal documents and communications may shed light on Total Wine's competition with other retailers. Internal Total Wine documents may also explain any discriminatory prices, discounts, or services Southern provided to Total Wine or may recount communications or negotiations between Total Wine's and Southern's employees about these topics. This information is germane to the Commission's investigation and is relevant to assessing any meeting competition or cost justification defense that Southern may assert. *See* Brown Decl. ¶ 9. Information probative of these issues and instructive to the Commission is not limited to what might appear in Southern's own files or what might be necessary or admissible "to prove specific charges." *Invention Submission*, 965 F.2d at 1090; *see also Morton Salt*, 338 U.S at 642-43; *Sandsend Fin. Consultants*, 878 F.2d at 878 ("[A]n administrative agency's power to issue subpoenas as it performs its investigatory function is a broad-ranging one which courts are reluctant to trammel.").

Second, external emails between Total Wine and Southern and responsive to the identified CID specification are highly relevant for the reasons outlined above. *See supra* Part II.B.1. Total Wine's main objection appears to be its unfounded belief that any responsive document would necessarily be duplicative of documents already produced by Southern. But given the widely varying practices employed by companies and individual custodians as to saving or archiving

emails, there is no guarantee that any single source saved every responsive communication. Thus, Total Wine may in fact possess highly relevant communications not otherwise available to the Commission. *See infra* Part II.C. In any event, the incremental burden of producing *external* communications is slight if Total Wine conducts a collection and search for responsive *internal* communications.

Third, the Commission here seeks production of custodial documents from a group of Total Wine executives directly involved in Total Wine's purchasing, marketing, and sales. Specifically, the Commission seeks documents from five custodians—Thomas Trone (Vice President, Merchandising), Travis Smith (Senior Vice President, Merchandising), Elias Aguilera (former Senior Vice President, Merchandising), Angela Weber (Senior Vice President, Merchandising), and Troy Rice (CEO and former Chief Stores Officer). FTC staff identified these individuals as likely to have relevant documents responsive to Specifications 3, 6, 12-13, and 15-16 based on their job titles and information learned from documents produced by other CID recipients. These executives regularly interact with Southern representatives and are likely to have materials relating to Total Wine's purchases of wine and spirits from Southern, services provided by Southern, and competition with other retailers. Brown Decl. ¶ 20. FTC staff suggested these individuals as potential custodians nearly three months ago, and beyond its blanket refusal to produce any employee documents, Total Wine has provided no information to show these are inapplicable custodians. *Id.*

Finally, CID recipients typically engage with FTC staff in a collaborative and iterative process to identify custodians likely to possess responsive materials and to provide information about their roles and responsibilities. Brown Decl. ¶ 10. All other retailer CID recipients in this investigation engaged in this process. But Total Wine did not. As such, FTC staff was at a

disadvantage in identifying a full set of the most relevant custodians. Brown Decl. ¶ 21. The Commission thus also seeks the ability to require Total Wine to search no more than three additional custodians' files, if the Commission deems it necessary to capture non-duplicative responsive documents based on information later obtained in the investigation.

Tellingly, every other retailer CID recipient has produced responsive and highly relevant internal and external communications located through a search of a similarly-sized group of relevant employees' custodial files. Brown Decl. ¶¶ 10, 24. So too should Total Wine.

### C.   Total Wine Cannot Defeat Enforcement of the CID on Grounds of Indefiniteness or Undue Burden

A CID is sufficiently definite when it describes the required information such "that a person can in good faith understand which documents must be produced." *Resol. Tr. Corp. v. Greif*, 906 F. Supp. 1446, 1452 (D. Kan. 1995); *see also Walsh v. Alight Sols LLC*, 44 F.4th716, 724 (7th Cir. 2022). Here, the CID includes a schedule consisting of two interrogatories, six data requests, and eleven document requests, all of which identify with specificity the materials sought. Pet. Ex. 2. To provide more clarity, the schedule defines twenty-six terms used in the specifications. *Id.* Notably, all nine other retailer CID recipients have completed (or nearly completed) their respective productions in response to nearly identical CIDs; their compliance shows that the CID specifications are adequately delineated and that the documents to be produced are readily understood. Brown Decl. ¶ 24.

Nor can Total Wine defeat enforcement of the CID because of undue burden. To establish undue burden, Total Wine would have to show that complying with the CID "threatens to unduly disrupt or seriously hinder [the] normal operations of [its] business." *Texaco*, 555 F.2d at 882 & n.52. This is a high standard and requires a CID recipient to show that the cost of compliance is "unduly burdensome in the light of the company's normal operating costs." *Maryland Cup Corp.*,

785 F.2d at 479. Total Wine cannot make this showing. To begin, its categorical refusal to search a single employee's custodial files or to produce a single custodial document or email is untenable. "Some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." *Texaco*, 555 F.2d at 882.

Moreover, apart from five discrete items identified by Total Wine in its August 15, 2023 letter and descriptions of the fields in its datasets,[6] the Commission here seeks documents responsive to only six CID specifications and custodial documents from no more than eight individuals, pursuant to only seven keyword searches. Pet. at ¶ 25 & App'x A; *see supra* at 15-16. Total Wine—the largest alcohol-specific retailer in the United States with over 250 stores, more than 12,000 employees, and annual revenues of $5 billion—has not and cannot credibly claim that producing this information will unduly disrupt or seriously hinder its business operations, as required by *Texaco* and other authorities. Pet. Ex. 4, Kooser Decl. ¶ 5; Pet. Ex. 31. By selecting just five specific custodians (i.e., Trone, Smith, Aguilera, Rice, and Weber) and no more than three additional custodians' files if warranted by further case developments, FTC staff has excluded over 99.9% of Total Wine's employees from the scope of the CID, including a large number of individuals who likely have responsive materials.

Further, the volume of responsive documents under the FTC's search parameters is unlikely to be very large, given Total Wine's representation that it only retains documents for ninety days. Brown Decl. ¶ 20. Regardless, even if responsive documents number in the hundreds of thousands, that alone is not enough to demonstrate undue burden given Total Wine's size, resources, and the availability of advanced search techniques and tools. *See, e.g., Texaco*, 555 F.2d

---

[6] Indeed, at one point Total Wine offered to produce the discrete set of materials identified in sub-paragraphs 25(c)-(h) of the Commission's Petition, confirming that such production is not unduly burdensome. Brown Decl. ¶ 22; Pet. Ex. 24.

at 882 & n.53 (affirming CID enforcement even though company claimed responding to the subpoena would cost the equivalent of $4 million).

Total Wine claims that the CID is unreasonable and unduly burdensome because it is a non-party and because it believes that all relevant information should be available directly from Southern. *See* Pet. Ex. 4. These contentions lack merit.

Although presently a third-party, Total Wine is a large chain retailer that may be deriving significant financial benefits and unfair competitive advantages over small independent retailers from the possible discriminatory practices of Southern. Total Wine is thus not a typical witness. In any event, the standard for enforcement of administrative compulsory process is the same whether the subpoenaed entity is a target of the investigation or a third party. *See, e.g.*, *Dresser Indus.*, 1977 WL 1394, at *3 (applying *Texaco* standard to enforce non-party subpoena and holding "[i]n view of this standard and the 'strictly limited' role of the court, one who opposes an agency's subpoena necessarily must bear a heavy burden. That burden is essentially the same even if the subpoena is directed to a third party not involved in the adjudicative or other proceedings out of which the subpoena arose" (citation omitted)). The statute authorizing the Commission to issue CIDs specifically empowers the Commission to obtain from third-party "witnesses" "*all* such documentary evidence *relating to any matter under investigation*." 15 U.S.C. § 49 (emphases added); *see also* 15 U.S.C. § 57b-1.[7] Indeed, an important and effective tool in investigations involves comparing, contrasting, and supplementing information and materials obtained from targets with those obtained from third parties. Moreover, there is "no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an

---

[7] Contrary to arguments Total Wine previously made to FTC staff, FTC subpoenas are not issued pursuant to Federal Rule of Civil Procedure 45.

opposing party before seeking them from a non-party." *Software Rts. Archive, LLC v. Google Inc.*,
No. 2:07-CV-511, 2009 WL 1438249, at *2 (D. Del. May 21, 2009) (quotation omitted); *see also
Viacom Int'l, Inc. v. YouTube, Inc.,* No. C 08-80129 SI, 2008 WL 3876142, at *2-*3 (N.D. Cal.
Aug.18, 2008) (same).

Furthermore, as observed in *Texaco* and numerous other cases, it is significant to a court's
analysis that other third parties are "willing and able to comply with similar subpoenas without
undue effort." *Dresser Indus.,* 1977 WL 1394, at *5; *see also Texaco*, 555 F.2d at 40. Here, the
Commission's experience confirms that all nine other retailers, responding to CIDs virtually
identical to the Total Wine CID, agreed to conduct proposed searches in a set of relevant
employees' files and produced documents and emails responsive to Specifications 3, 6, 12-13, and
15-16, without hindering their respective business operations. *See* Brown Decl. ¶¶ 10, 24. Total
Wine was the only third-party CID recipient that refused to do so. This fact alone undercuts any
claim of undue burden by Total Wine.

## III.    Total Wine Has Waived Any Challenge To The CID Not Raised Before The FTC

Finally, Total Wine has waived any challenge to the CID that it did not raise before the
Commission in its April 7, 2023 Petition to Limit Civil Investigative Demand. A party must
exhaust its administrative remedies before seeking relief in court, including on objections to the
FTC's compulsory process. *McKart v. United States*, 395 U.S. 185, 193-94 (1965); *Morton Salt*,
338 U.S. at 653-54; *FTC v. XCast Labs, Inc.*, No. 21-1026, 2021 WL 6297885, at *2-3 (C.D. Cal.
Dec. 9, 2021) (noting that "[a]mple authority supports the conclusion that a party much present
and exhaust" its objections to an FTC CID before coming to court) (citing cases); *FTC v.
O'Connell Assocs., Inc*., 828 F. Supp. 165, 171 (E.D.N.Y. 1993) (enforcing FTC CID because
respondents failed to raise objections in a petition to quash or limit). Because CID recipients have
an administrative remedy to quash or narrow a CID, *see* 15 U.S.C. § 57b-1(f); 16 C.F.R. § 2.10,

the failure to present a basis for opposing the CID to the Commission waives the ability to assert that objection to the CID later in court. *FTC v. Tracers Info. Specialists, Inc.*, No. 8:16-MC-TGW, 2016 WL 3896840, at *4 (M.D. Fla. June 10, 2016). (holding objections to a CID not raised before the Commission are waived in court); *see also O'Connell Assocs., Inc.*, 828 F. Supp. at 170 (same).

Here, the only objections Total Wine asserted in its Petition to Limit, include (1) the relevance of definitions of "Distributor" and "Relevant Products," (2) the relevance of CID Specifications 8 and 12-15, (3) the relevance of materials and information from 2018 and 2019, (4) the purported burden associated with certain aspects of the data specifications, and (5) the "broadness" of the requests for "all documents" in response to Specifications 3, 12-13 and 15-16. Pet. Ex. 4. Total Wine has waived any other argument against CID enforcement.

Specifically, Total Wine has waived any argument over burdens associated with the custodians and keyword searches identified by the FTC. In its Petition to Limit, Total Wine raised no objection to searching employee files. To the contrary, Total Wine represented that it would "engage in discussions about potential custodians and search terms." *See, e.g.*, Pet. Ex. 4 at 16. And while Total Wine asserted burden arguments for certain data, nowhere did it allege that reviewing any employee's files would be an undue burden. To the extent Total Wine attempted to substantiate any burden assertions in its petition, it included allegations related only to dataset productions. Pet. Ex. 4, Kooser Declaration. Additionally, Total Wine did not object to CID Instruction I.4, which requires Total Wine to conduct a search of "those documents held by any of the Company's officers, directors, employees, agents, representatives, or legal counsel, whether or not such documents are on the premises of the Company." Pet. Ex. 2. Given FTC staff's repeated invitations to engage on a search protocol including custodial documents and keyword searches,[8]

---

[8] In seeking to discuss a document search protocol, FTC staff expressly referred Total Wine to 16 C.F.R. §2.7(k),

20

Total Wine knowingly waived any argument against producing those documents—including the use of keyword searches—to respond to Specifications 3, 6, and 15-16.

## **CONCLUSION**

Based on the foregoing, the FTC submits that it has met the relevant legal requirements for enforcement of the CID. Total Wine's course of conduct demonstrates that, absent an enforcement order from this Court, the company will continue to flout its production obligations. Accordingly, the FTC requests that the Court enforce the CID consistent with the prayer for relief in the Petition.

Dated: October 20, 2023                         Respectfully submitted,

ANISHA S. DASGUPTA
General Counsel

MICHELE ARINGTON
Assistant General Counsel for Litigation

*/s/ Patricia McDermott*
PATRICIA MCDERMOTT (VA Bar No. 41700)
CHRISTINA BROWN
ALTUMASH MUFTI
Attorneys, Anticompetitive Practices Division

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
Tel.: (202) 326-2569
pmcdermott@ftc.gov
cbrown5@ftc.gov
amufti@ftc.gov

---

which requires a CID recipient to "attempt to resolve all issues" and directs that the Commission "will consider only issues raised during the meet and confer process." *See* Brown Decl. ¶ 14.

21